386 A.2d 535

Betty ADELMAN, Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 13, 1977.

Decided April 13, 1978.

118

James J. McCabe, Jr., Philadelphia, with him Joseph M. Hankins, Philadelphia, for appellant.

Arthur J. Seidner, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

On this appeal we are again faced with the question of whether an insurance company may contractually divide the uninsured motorist coverage in two or more automobile

insurance policies to prevent "stacking" or "pyramiding" of recovery.[1] Appellant contends that the lower court erred in refusing to modify the award of $20,000 to appellee following arbitration conducted pursuant to the Arbitration Act of 1927, 5 P.S. § 161 *et seq.*[2] We agree and therefore reverse

1. This issue rears its multi-faceted head in a myriad of factual situations. The only reported appellate decision in this jurisdiction squarely on point is *Nationwide Mutual Insurance Co. v. Ealy,* 221 Pa.Super. 138, 289 A.2d 113 (1972), *allocatur denied,* 221 Pa.Super. *xliii.* In *Ealy* we held that Nationwide's contractual division of its uninsured motorist coverage in order to prevent cumulation of coverage among Ealy's five separate automobile policies did not contravene Pennsylvania's Uninsured Motorist Act. Act of August 14, 1963, P.L. 909, *as amended,* December 19, 1968, P.L. 1254, No. 397, § 1, 40 P.S. § 2000. In *State Farm Mutual Automobile Insurance Co. v. Williams,* 244 Pa.Super. 640, 371 A.2d 1314 (1977), we affirmed per curiam the lower court's confirmation of the arbitrator's refusal to permit cumulation of coverage. The *Williams* case involved two vehicles separately owned by a husband and wife and insured by State Farm. The husband was injured while driving the wife's automobile. In light of the fact that the *Williams* policies contained an exclusionary clause nearly identical to that in *Ealy* (and to that in the present case), the lower court refused to permit Williams to recover under the policy issued on his vehicle, but restricted his uninsured motorist coverage to the $10,000 provided by his wife's policy.

2. The State Farm policies involved here both provide for arbitration of disputes under the Arbitration Act of 1927. Section 11(d) of the Act, 5 P.S. § 171(d) (1963), permits the party aggrieved by the arbitrator's decision to petition the court of common pleas for a modification of the award. Appellant need only establish that the arbitrator's award was contrary to the law in order to prevail. *Id.* This is to be contrasted with the standard of review which must be adhered to in appeals from common law arbitration. In the latter situation the party appealing the decision must establish fraud, misconduct, corruption or other such irregularity on the part of the arbitrator, or allege that the decision contravenes statutory or constitutional dictates. *Runewicz v. Keystone Ins. Co.,* 234 Pa.Super. 355, 360, 338 A.2d 602, 604 (1975); *United Services Automobile Association Appeal,* 227 Pa.Super. 508, 516, 323 A.2d 737, 741 (1974). To be distinguished are cases such as *Harker v. Pennsylvania Manufacturers' Assoc. Ins. Co.,* 219 Pa.Super. 485, 281 A.2d 741 (1971), in which we did not decide whether the common law arbitration decision was correct in allowing "stacking." We held only that the arbitrators' holding was a "colorable and reasonable interpretation of the contract . . . ." *Id.,* 219 Pa.Super. at 488, 281 A.2d at 743. *See also Gallagher v. Educator and Executive Insurers, Inc.,* 252 Pa.Super. 414, 381 A.2d 986; *Flynn v. Allstate Ins. Co.,* 50 D. & C.2d 195 (C.P. Allegh. 1970).

and remand for the entry of an award in the amount of $10,000.

Appellee, Betty Adelman, was injured in an automobile accident on June 28, 1974 when her 1966 Plymouth, which she was operating, was struck by an uninsured motorist. At the time of the accident both appellee's car and the 1970 Oldsmobile belonging to her husband were insured under separate policies issued by appellant, State Farm. Each policy provided uninsured motorist coverage of $10,000 for any one person injured in an accident as required by the Uninsured Motorist Act.[3] Appellee filed a claim for uninsured motorist coverage under both policies, requesting a total payment of $20,000.[4] Appellant maintained, however, that appellee was entitled to recover only under the policy covering her vehicle and the dispute was submitted to arbitration in accordance with the arbitration clause in the policies. *See* Record at 35a and 51a.

Following a hearing before a mutually agreed upon arbitrator on June 2, 1976, and the submission of written briefs, the arbitrator entered an award of $20,000 in favor of appellee. The decision, issued on June 17, 1976, clearly stated that the arbitrator had limited himself to the question of the interpretation to be given to the policy and considered *Nationwide Mutual Insurance Co. v. Ealy,* 221 Pa.Super. 138, 289 A.2d 113 (1972), to be the controlling authority. He determined, however, that the exclusion which we approved in *Ealy* did not exist in the State Farm policies in question. Appellant filed a timely motion to modify the award in the Court of Common Pleas of Philadelphia County, asserting that the arbitrator's award was contrary to law. The lower court entered an order denying the motion on October 20, 1976, and issued an opinion in support of that order on March 28, 1977.

3. The 1968 amendments to the Act made the previously optional uninsured motorist coverage mandatory.

4. It is agreed by both parties that Mrs. Adelman's injuries exceeded $20,000 and that the accident was caused by the negligence of the uninsured motorist with whom she collided.

Both the arbitrator and the trial judge based their decisions on the mistaken belief that the *Ealy* exclusion was not contained in the State Farm policies presently under scrutiny.[5] On the contrary, we clearly dealt in *Ealy* with the exclusion to the uninsured motorist coverage which prevented recovery by the named insured or his relatives for injuries sustained while occupying an insured-owned automobile not listed in the declarations of the policy.[6] The policies issued by appellant to appellee and her husband contain language nearly identical to that in *Ealy*. Exclusion (b) in Section III of the State Farm policies issued to Mr. and Mrs. Adelman provides that the uninsured motorist coverage does not apply

.    .    .    .    .

(b) to bodily injury to an insured while occupying or through being struck by a land motor vehicle owned by the named insured or any resident of the same household, if such vehicle is not an owned motor vehicle.

Record at 30a.

The only real difference between the *Ealy* exclusion and the one at issue is that in the latter the term "owned motor vehicle" is used rather than the term "insured land motor vehicle."[7] The definitions of these terms in the respective

---

**5.** Appellee contended below, and the arbitrator implicitly held, that in *Ealy* we had approved the "Limits of Liability" clause in the Nationwide policy. *See* Record at 89a. This is incorrect, however. The "Limits of Liability" clause comes into play only when two or more vehicles are insured under the same policy. Thus it is irrelevant to a situation such as that with which we were faced in *Ealy*.

**6.** Exclusion (b) in the Nationwide policy with which we dealt in *Ealy* provided that the uninsured motorist coverage would not apply

.    .    .    .    .

(b) to bodily injury to an Insured while occupying a land motor vehicle (other than an insured land motor vehicle) owned by a Named Insured or any relative resident in the same household, or through being struck by such a land motor vehicle.
Record at 89a–1.

**7.** *See* note 6, *supra*.

policies are, however, nearly identical.[8] The lower court was, therefore, incorrect in holding that the *Ealy* exclusion was not present in the Adelmans' State Farm policies.

Having determined that the same exclusion is present here as in *Ealy*, we must examine Exclusion (b) to ascertain if it operates to prevent Mrs. Adelman from recovering under Mr. Adelman's policy. The interpretation of an insurance policy is, of course, a question of law for the court. *Baldwin v. Magen,* 279 Pa. 302, 123 A.2d 815 (1924). Courts, however, cannot rewrite the terms of the policy or give them a construction in conflict with the accepted and plain meaning of the language used. *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty & Surety Insurance Co.,* 426 Pa. 453, 233 A.2d 548 (1967). When a word used in the exclusion under scrutiny is specifically defined in the definitions section of the policy, it is that definition which must control in determining the applicability of the exclusion. *Great American Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 412 Pa. 538, 194 A.2d 903 (1963). Any ambiguous terms must be given a construction most favorable to the insured. *Patton v. Patton,* 413 Pa. 566, 198 A.2d 578 (1964); but "[a] provision of an insurance policy is ambiguous [only] if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Celley v. Mutual Benefit Health & Accident Association,* 229 Pa.Super. 475, 481–82, 324 A.2d 430, 434 (1974).

8. The State Farm policies both provide that the definition of "owned motor vehicle" set forth in Section I also applies to Section III. The term is defined in Section I to mean "the motor vehicle or trailer described in the declarations. . . ." Record at 27a. The *Ealy* policy defined "insured automobile" as "an automobile described in the schedule . . . [of the policy]." Record at 89a–1.

■ Exclusion (b) in *Mr. Adelman's* policy is totally unambiguous.[9] It reads, with interpolations from the definitions section, as follows:

This insurance does not apply:

. . . . .

(b) to bodily injury to an insured [10] [Mrs. Adelman] while operating or through being struck by a land motor vehicle owned by the named insured [Mr. Adelman] or any resident of the same household [Mrs. Adelman], if such vehicle is not an owned motor vehicle [the motor vehicle described in the declarations of Mr. Adelman's policy]. (footnote added).

In other words, the uninsured motorist coverage provided by Mr. Adelman's policy on his 1970 Oldsmobile does not apply to Mrs. Adelman (or to any other relative residing in the same household) when she is driving any vehicle *owned by her or her husband* other than the 1970 Oldsmobile (the sole vehicle described in the declarations of Mr. Adelman's policy).[11] The question then becomes whether this unambiguous contractual limitation on uninsured motorist coverage is permissible under regulations promulgated by the Insurance Commissioner and under the Uninsured Motorist Act.

The regulations promulgated by the Insurance Commissioner provide that the extent of coverage under the uninsured motorist endorsement of an insurance policy shall be at least that provided by the sample form, which conforms

9. *Compare Blocker v. Aetna Casualty and Surety Co.,* 232 Pa.Super. 111, 332 A.2d 476 (1975), in which we held the "Limits of Liability" clause in an uninsured motorist endorsement to be ambiguous.

10. The unqualified word "insured" means, *inter alia,* the named insured and, while residents of his household, his spouse and the relatives of either spouse. Record at 30a.

11. The converse is, of course, true under Mrs. Adelman's policy on her 1966 Plymouth. Neither she (the named insured) nor any of her relatives in the same household (including Mr. Adelman) would be covered by the Plymouth's policy if they were driving another automobile owned by them (i. e. the 1970 Oldsmobile).

to the national standard form.[12]   31 Pa.Code § 63.2.   The sample form sets forth the following exclusion:

This endorsement does not apply:

.    .    .    .    .

(b) to bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a named insured or any relative resident in the same household, or through being struck by such an automobile. .   .

31 Pa.Code § 63.2, Exhibit C at 184.

To this point the sample exclusion is virtually identical to Exclusion (b) in the State Farm policies with which we are concerned.   The Insurance Commissioner's sample form goes on to state, however, that, "[T]his exclusion does not apply to the principal named insured or his relatives while occupying or if struck by an automobile owned by an *insured named in the schedule* or his relatives."   *Id.*

Since the State Farm policies do not contain the latter clause,[13] it is necessary to ask whether the omission is fatal in this case.   "Even though the policy does not exactly match the Commissioner's sample form, if the policy as applied to this case   .   .   .   has the same effect as the form, it should not be held in violation of the regulations under which the form was promulgated."   *Wilbert v. Harleysville Mutual Insurance Co.,* J. 132/76, slip opinion at 3. What then is the meaning of the omitted clause and, more particularly, of the words "insured named in the schedule?" [14]

**12.**  The 1963 Revised Standard Family Automobile Liability Policy did not contain this exception to the exclusion.   It first appeared in the 1966 Standard Policy, which is presently in use.   P. Pretzel, *Uninsured Motorists,* 32 (1972).

**13.**  There is much confusion concerning the intent of the drafters of this exclusion.   *See* P. Pretzel, *Uninsured Motorists,* 30–31 (1972). *See also* Widiss, *A Guide to Uninsured Motorist Coverage* § 2.9 (Supp.1976).

**14.**  Since the Commissioner's sample form was promulgated in conformity with the national standard form, it is instructive to examine

■■ The first part of Exclusion (b), both in the State Farm policies and in the sample form, is relatively clear. It denies coverage to an insured who is occupying, or is struck by, any vehicle owned by the named insured or his relatives, other than the vehicle described in the declarations of the policy. The concluding portion of the paragraph, on the other hand, contains an exception to that exclusion. To paraphrase the exception, Exclusion (b) does not apply when the named insured or his relatives are riding in a vehicle owned by an insured named in the schedule (or his relatives) rather than one owned by a named insured (or his relatives). The term "insured named in the schedule," as used in the Commissioner's sample form, means a "designated insured." [15] There is no doubt that Exclusion (b) in Mr. Adelman's policy precludes Mrs. Adelman from applying the uninsured motorist coverage in her husband's policy to injuries which she sustained while occupying her own automobile. She is an "insured" under her husband's policy, but she was driving an automobile owned by her (a relative of the named insured, Mr. Adelman) which is not described in the declarations of Mr. Adelman's policy. The result would be no different if Exclusion (b) had contained the exception set forth in the Commissioner's sample form and the national standard form. Mrs. Adelman is not named in the schedule to Mr. Adelman's policy as a "designated insured." Obviously, therefore, her 1966 Plymouth could not be a vehicle owned by a "designated insured" and the exception to the exclusion does not come into play. The policy, as applied to the facts of this case, has exactly the same effect as the Commissioner's sample form. Exclusion (b) cannot, there-

the definitions in Section V of the latter. The 1966 Standard Form defines "designated insured" as "an individual *named in the schedule* under Designated Insured." P. Pretzel, *Uninsured Motorists,* Appendix C at 210 (1972) (emphasis added). Exclusion (b) in the Standard Form uses the term "designated insured" rather than "insured named in the schedule." *Id.* at 208.

15. If the term "insured named in the schedule" were construed to mean the "named insured" as has sometimes been argued, the exception would completely engulf the exclusion and the entire paragraph would be a nullity.

fore, be held in violation of the regulations promulgated by the Insurance Department. Even this conclusion does not end our inquiry. We must further consider whether the Commissioner's sample form itself contravenes the policies behind the adoption of the Uninsured Motorist Act.[16]

"The legislative intent in enacting the uninsured motorist law therefore requires a liberal construction of the statute and a pronounced propensity . . . to find coverage unless equally strong legal or equitable considerations to the contrary are present." *Sands v. Granite Mutual Insurance Co.*, 232 Pa.Super. 70, 80, 331 A.2d 711, 716–17 (1974). Any conditions or restrictions in the insurance policy in derogation of the statute's purpose are void as against public policy. *Shamey v. State Farm Mutual Automobile Insurance Co.*, 229 Pa.Super. 215, 331 A.2d 498 (1974). Our Supreme Court has reiterated on several occasions that the Uninsured Motorist Statute is " 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' " *Pattani v. Keystone Insurance Co.*, 426 Pa. 332, 338, 231 A.2d 402, 404 (1967), *quoting Katz v. American Motorists Insurance Co.*, 244 Cal.App.2d 886, 53 Cal.Rptr. 669 (1966). *Accord, Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). Does Exclusion (b) contravene the statute's purpose when it is used, as here, to prevent cumulation of coverage between two separately insured automobiles?[17] We think not.

16. The insured's rights are to be determined by the terms of the insurance policy, but only to the extent that the policy grants benefits at least equal to those required by statute. *Darrah v. California State Automobile Assoc.*, 259 Cal.App.2d 243, 66 Cal.Rptr. 374 (1968).

17. To be distinguished is the situation with which we dealt in *Bankes v. State Farm Mutual Automobile Insurance Co.*, 216 Pa.Super. 162, 264 A.2d 197 (1970), in which State Farm denied coverage to the owner of an insured automobile who was injured by an uninsured motorist while riding his uninsured motorcycle. We there held that Exclusion (b) did not prevent recovery under the uninsured motorist endorsement in the automobile policy, but our decision was based on

The Pennsylvania Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, *as amended,* 40 P.S. § 2000, provides that

> (a) No motor vehicle liability policy of insurance . . . shall be delivered or issued . . . unless coverage is provided therein . . . in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1929 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . .

The Vehicle Code, Act of April 29, 1959, P.L. 58, 75 P.S. § 1421,[18] established minimum liability coverage of $10,000 per person and $20,000 per accident. Thus, by its terms, the Uninsured Motorist Act requires only that uninsured motorist coverage be included in any automobile liability policy in an amount not less than that set forth in the Motor Vehicle Safety Responsibility Provisions of the Vehicle Code. The intent of the Act is, therefore, that an insured injured by an uninsured motorist be able to recover those damages which he would have received had the uninsured motorist maintained liability insurance. *Bankes v. State Farm Mutual Automobile Insurance Co.,* 216 Pa.Super. 162, 168, 264 A.2d 197, 200 (1970). 7 Am.Jur.2d, *Automobile Insurance* § 135 (1963). The uninsured motorist endorsement fills the gaps left by compulsory liability insurance and financial responsibility legislation. Comment, *The Financially Irresponsible Motorist: A Survey of State Legislation,* 10 Vill.L.Rev. 545, 553 (1967). It provides a minimum amount of protection against losses caused by a negligent uninsured motorist by distributing the burden of loss among all owners of insured vehicles registered in the Commonwealth.

the fact that the insurer had impermissibly broadened the exclusion by using the term "land motor vehicle" rather than the word "automobile" used in the sample form issued by the Insurance Commissioner.

**18.** Repealed by the Act of June 17, 1976, P.L. 162, No. 81, § 7.

As we stated in *Nationwide Mutual Insurance Co. v. Ealy,* 221 Pa.Super. 138, 289 A.2d 113 (1972), *allocatur denied,* 221 Pa.Super. xliii, "[N]othing in the Uninsured Motorist Act precludes contractual exclusion of uninsured motorist coverage for unlisted, insured-owned vehicles as long as the exclusion does not seek to reduce the insured's coverage below that specified in the statute." In *Ealy* we distinguished both *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968) and *Bankes v. State Farm Mutual Automobile Insurance Co.,* 216 Pa.Super. 162, 264 A.2d 197 (1970). In *Blumling* our Supreme Court examined the "other insurance" clause in the policy and held it invalid because the insurer attempted to limit its liability under the policy purchased from it by Blumling to the difference between any recovery under the insurance policy of the vehicle he was driving (his employer's vehicle) and the $10,000 statutory recovery. Harleysville was thus attempting to circumvent the statute by, in effect, offering less uninsured motorist coverage under its policy than that required by the Uninsured Motorist Act.

In *Bankes,* the insurer argued that Exclusion (b) validly denied recovery to an insured who was operating an uninsured motorcycle owned by him and who sought to recover under a policy issued on his automobile. We rejected this attempt to deny uninsured motorist coverage completely and held that the exclusionary language used there impermissibly broadened that authorized by the Insurance Commissioner.[19]

19. *See* note 17, *supra.* It is interesting to note that in *Bankes* we questioned, but did not decide whether the exclusion authorized by the Commissioner was itself valid under the statute. In reviewing the legislative history of the 1968 amendments to the Uninsured Motorist Act, we made the following observation in *dictum*:
    When this amendment was enacted, most uninsured motorist policies contained three exclusions similar to the ones contained in State Farm's policy here. They excluded coverage if:
    1. The insured settles with the third party;
    2. The insured is occupying an uninsured automobile owned by the insured; or
    3. Benefits inure directly or indirectly to any workmen's compensation fund.

Certainly the Legislature was cognizant of the fact that, by fixing the amount of obligatory uninsured motorist coverage at the level specified in the financial responsibility law, motorists would occasionally suffer uncompensated injuries in excess of $10,000 at the hands of uninsured motorists. We fail to see why public policy would dictate that the owner of two or more vehicles is entitled to more coverage (by cumulating policies) than a person who owns only one vehicle, particularly when unambiguous contractual language is used to insulate the coverage on one vehicle from that provided by other *insured* vehicles owned by the insured or his family.

Nor are we persuaded by appellee's argument that since uninsured motorist insurance premiums were paid on both Mr. and Mrs. Adelman's automobiles, double coverage should be afforded in order to prevent the insured from being deprived of the consideration paid for the uninsured motorist coverage on the second vehicle. The insurer undertakes a considerable risk even if the exclusion is allowed, and the amount of the premium "presumably has been calculated in light of the exclusion." *Motor Club of America Insurance Co. v. Phillips,* 66 N.J. 277, 291, 330 A.2d 360, 368 (1974).[20]

Senate Bill 961, which was the bill from which the amendment was ultimately taken, contained each of these exclusions. . . . Yet, while exclusions 1 and 3 above were specifically included in the 1968 statutory amendment, exclusion 2 was stricken and not adopted by the legislature. There thus appears a definite legislative intent to deny the exclusion claimed by State Farm in this case and to extend uninsured motorist coverage even to individuals occupying uninsured automobiles.

*Bankes v. State Farm Mutual Automobile Ins. Co.,* 216 Pa.Super. at 167–68, 264 A.2d at 199 (1970).

It will be noted, upon a close examination of the language employed, that exclusion 2 quoted above sought to preclude coverage if the insured was occupying an *uninsured* automobile owned by him. If this were permitted, the insured would be left entirely without protection in derogation of the statute. Whatever indication of legislative intent the quoted passage may provide, it is inapplicable in the instant case in which both vehicles are *insured* and the insurer merely seeks to prevent cumulation of coverage between the two policies.

20. While a majority of jurisdictions, including Pennsylvania, have held that "excess-escape" and "other insurance" clauses are invalid,

"Under each policy the insured is given the full protection required by the act." *Nationwide Mutual Insurance Co. v. Ealy,* 221 Pa.Super. 138, 143, 289 A.2d 113, 116 (1972).

We hold, therefore, as we did in *Ealy,* that under the circumstances of this case Exclusion (b) is not in contravention of the uninsured motorist law. An insurance company may contractually divide the uninsured motorist coverage in two or more automobile insurance policies issued to members of the same household in order to prevent cumulation of coverage.

Reversed and remanded for the entry of an award in favor of appellee in the amount of $10,000.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

there is no clear cut trend in the cases dealing with multiple claims on different policies issued by a *single* insurer on more than one vehicle owned by the named insured, or on more than one automobile owned by members of the same household. *Motor Club of America Ins. Co. of Phillips,* 66 N.J. 277, 289, 330 A.2d 360, 367 and n. 4 (1974).

In the special case of *uninsured* vehicles owned by the named insured or members of his household, a majority has held exclusions similar to the one at issue to be invalid. A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.9, 20 (Supp.1976). *See, e. g., Wilbert v. Harleysville Mutual Ins. Co.,* J. 132/76.