## Kossowsky v. Travelers Insurance Company

*Saul Davis,* for plaintiff.
*William K. Herrington,* for defendant.
*SILVESTERI,* J., March 24, 1982—This is an action in assumpsit to recover accidental loss-of-life benefits under a certificate of insurance.

There is no dispute between the parties as to the operative facts, which are as follows. Plaintiff's decedents, Jacob and Ahouva Aghassy, husband and wife, died on April 20, 1981 in an airplane crash. At the time of the crash decedents were the only occupants of their airplane. The husband, Jacob, was operating the airplane and the wife, Ahouva, was a passenger.

The Travelers Insurance Company, as the insurer, issued a master policy to Exxon Travel Club as the Policyholder for Accidental Loss-of-Life to members of Exxon and issued a Certificate of Insurance, which was given to the members of Exxon. The certificate stated: "The class of membership as shown on the application for membership on file with the Policyholder determines the Persons Covered as follows:

| Class of Membership Selected | Covered Persons |
|---|---|
| 1 | Member Only |
| 2 | Member and Spouse |
| 3 | Member and Children |
| 4 | Member, Spouse and Children |

THIS IS A CERTIFICATE OF PARTICIPATION IN AN ACCIDENTAL LOSS-OF-LIFE MASTER POLICY ISSUED TO EXXON TRAVEL CLUB, INC. . . . "

Under the heading Accidental Loss-of-Life Benefit, the certificate provided as follows:

If injuries result in loss of life of a Member or a Covered Dependent . . . , the Company will pay indemnity as follows:

| For Loss of Life | "Common Accident" | "Other Accident" |
|---|---|---|
| The Member and Covered Spouse | $100,000 | |
| The Member "Basic Indemnity" | — | $20,000 |
| "Supplemental Indemnity; | — | $30,000 |
| Covered Spouse | — | $10,000 |
| Each Covered Child | $ 5,000 | $ 5,000 |

"Common Accident" means the same accident, or separate accidents occurring within the 24-hour period measured from the time of the occurrence of the first accident.

"Other Accident" means any accident not qualifying as "Common Accident".

The certificate also contained, under the heading "exclusions", the following:

The insurance under the policy shall not cover suicide (sane or insane) or any attempt thereat nor shall it cover any loss caused by or resulting from:

\* \* \*

B. operating or learning to operate or while serving as a member of a crew of an aircraft.

At the time of the incident and deaths giving rise to this action, Jacob was a Class 2 member of Exxon.

Travelers paid $10,000 for the death of Ahouva as a "Covered Spouse" under "Other Accident". Plaintiff seeks an additional $90,000 of benefit under "The Member and Covered Spouse" "Common Accident".

Travelers and Exxon have filed a joint motion for summary judgment and plaintiff has filed a motion for summary judgment which, on its face, appears to be against both Travelers and Exxon; however, at argument, both orally and in his brief, plaintiff stated he is not pursuing his motion against Exxon.

Where, as here, there is no dispute as to the facts and the question resolves itself to one of interpretation of a document, summary judgment is appropriate, unless there is an ambiguity, the nature of which requires the taking of testimony for the resolution thereof; thus, initially, we must determine if there is an ambiguity and, if so, the nature thereof.

## MOTION FOR SUMMARY JUDGMENT BY AND AGAINST TRAVELERS

Plaintiff's claim against Travelers is predicated on the certificate issued to Jacob through Exxon. Travelers in its pleading of new matter pleaded the master policy referred to in the certificate and attached a copy of the master policy to its pleading. Plaintiff in his reply to new matter alleged that the master poli-

cy was not a true and correct copy of the policy of insurance between Travelers and Exxon.

In his brief, plaintiff argues that the "focus of interpretation" should be the certificate; however, in his brief, he quotes provisions from the master policy attached to Travelers' answer and new matter, together with the language of the certificate in support of his motion. In so doing, plaintiff has waived his assertion in his reply to new matter that said master policy is not a true and correct copy thereof.

Plaintiff contends that the Insuring Agreement (Part I of the Master Policy) states: "To insure all members of the Policyholder (Exxon) . . . and agrees to pay as to each person with respect to whom coverage is afforded hereunder, the benefit hereinafter described; that both the Certificate and the Master Policy requires that the injuries . . . occur while coverage under this policy is in force as to such person . . . ; that the term 'coverage' is not defined either in the Certificate or the Master Policy and is used at various times to convey two distinctly different concepts of both documents; and that the outside portion of the Certificate refers to the 'Persons Covered' and 'Covered Persons' in terms of the class of membership of the member of Exxon; that this pertains only to the persons for whom premiums have been paid as indicated in the 'Premium Revision Rider' portion of the Master Policy; likewise, under the provisions for effective date or commencement of insurance for an eligible dependent' and the 'termination of insurance' provisions of both the certificate and the master policy there are repeated references to 'coverage' in the sense of being an eligible insured for whom the premium has been paid under the policy." Plaintiff then goes on to say, "Only in the exclusion sections is the attempt clearly made to use the term in a dif-

ferent sense, by denying coverage because of loss caused by or resulting from operating an aircraft."

By reason of "coverage" not being defined and since "persons covered" and "covered persons" pertain only to persons for whom premiums have been paid; that by reason of repeated references to "coverage" in the "eligible dependent" and the "termination of insurance" provisions in the sense of being an eligible insured for whom the premium has been paid, and only in the exclusion section is an attempt made to use the term in a different sense, the plaintiff concludes, "hence the insuring agreement undertaken by Travelers, "to pay as to each person with respect to whom coverage is afforded hereunder', and the requirement that an injury occur while coverage is in force as to such person, are clearly ambiguous and susceptible to two constructions. They should be interpreted in favor of the insured, therefore, as referring to those persons for whom the appropriate premiums have been paid, here the member and his covered spouse holding Class 2 membership."

Plaintiff next contends that both the certificate and the master policy without limitation provide for the payment of $100,000 for loss of life of both the member and covered spouse in a common accident, whereas if the death of "The Member" or "Covered Spouse" occurs as the result of an "Other Accident", the benefit is $20,000 and $10,000 respectively. Plaintiff then concedes that the death of Jacob resulted from his operating an aircraft and that if benefits had been sought for him alone the exclusion would be effective. Plaintiff then states the death of Ahouva resulted from her being a passenger in the aircraft operated by her husband which was a covered risk for which Travelers paid the benefit under "Other Accident" for "Covered

Spouse". Plaintiff then argues that the joint deaths did not fall within the exclusion, that only a crash occurring while both were piloting the plane, as pilot and copilot, would have brought the loss of both lives within the exclusion. Plaintiff concludes, "This narrow interpretation of the exclusionary language is justified because of the ambiguity and uncertainty of the language used, and its susceptibility to more than one construction." Plaintiff goes on to say that since the exclusionary language "caused by or resulting from is equivalent to "because of" which has been interpreted to mean "exclusively by reason of", the exclusion in the certificate and master policy, ". . . should be strictly interpreted to apply to any loss caused exclusively by or resulting exclusively from operation of an aircraft. Since only one of the joint deaths here involved was the exclusive result of operation of the aircraft, while the other was attributable exclusively to passenger status in the plane, there should be coverage under the Common Accident provision."

Plaintiff further argues that since the language of exclusion ". . . any loss caused by or resulting from . . . operating or learning to operate or while serving as *a member*[1] of a crew of an aircraft" is case in *singular* terms the language chosen by the insurer was never intended to apply to multiple death of Common Accident situations.[2]

---

1. Frisch v. State Farm Fire & Casualty Co., 218 Pa. Super. 211, 275 A.2d 849 (1971).

2. Plaintiff, neither in his complaint nor in his brief, has pleaded or argued the issue of whether Travelers brought to Jacob knowledge of the existence of the exclusionary clause and explained its significance or that Jacob was unaware of the exclusionary clause and its significance; the plaintiff in his motion for summary judgment in paragraph three states, "The pleadings in this action are closed." and in paragraph four,

The thrust of plaintiff's argument is that the certificate and master policy are to be read to provide a $100,000 benefit for the deaths of a "member and covered spouse" where the deaths occur in a "common accident", that is, it is the "common accident" which triggers the benefit by reason of the claimed ambiguities, the different concepts in which the term "coverage" is used in the certificate and master policy and the language being susceptible to more than one construction. Plaintiff neither articulates the dual meaning of any term or phrase nor the different concepts in the certificate and master policy nor the two or more constructions of the language.

Travelers' argument is that the language of the master policy which is, in its relevant provisions herein, the same as in the certificate and both are clear and free of any ambiguity; Travelers further assert that the ambiguity claimed by plaintiff arises from the ingenuity of counsel and not the language of the documents and that plaintiff seeks to rewrite the provisions thereof.

The principles of law applicable to the interpretation of a policy of insurance are easy to state; that is, "The construction of an insurance policy is a question of law, Adelman v. State Farm Mut. Auto. Inc. Co., 255 Pa. Super. 116, 386 A.2d 535 (1978), but it is not the function of the court to rewrite a policy or give its terms a construction in conflict with their plain meaning. Pa. Manuf. Assoc. Ins. Co. v. Aetna Casualty & Ins. Co., 426 Pa. 453, 233 A.2d 548 (1967)." Garber v. Travelers Ins. Co., 280 Pa. Super. 323, 421 A.2d 744 (1980), and, "When the terms of

---

"There is no genuine issue as to any material fact." In view of the foregoing, it is impermissible for this court to raise the issue sua sponte and we refuse to do so.

a policy are clearly defined and form a coherent whole, it is not the role of the court to find ambiguity or unconscionability where none exists, and then rewrite the policy." Garber v. Travelers Ins. Co., supra, and, "It is of course true that an insurance policy is to be construed most strongly against the insurer and liberally in favor of the insured so as to effect the dominant purpose of indemnity or payment to the insured, but this is where the terms of the policy are ambiguous or uncertain and the intention of the parties is therefore unclear. See e.g., Caldwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959); Beley v. Mutual Life Ins. Co., 373 Pa. 231, 95 A.2d 202 (1953). 43 Am. Jur. 2d §271 . . . as the United States Court of Appeals for the 9th Circuit put it, 'Courts do not resort to forced construction in order to fasten liability upon an insurer which by the terms of the policy, it has not assumed.' Standard Accident Ins. Co. v. Winget, 197 F.2d (9th Cir. 1952)." Penn-Air, Inc. v. Indemnity Ins. Co. of N.A., 439 Pa. 511, 269 A.2d 19 (1970), and, ". . . coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured. Mohn v. American Casualty Co. of Reading, supra; Penn-Air, Inc. v. Indemnity Ins. Co. of North America, supra. Exceptions to an insurer's general liability are accordingly to be interpreted narrowly against the insurer. Penn-Air, Inc. v. Indemnity Ins. Co. of North America, supra; Miller v. Prudential Ins. Co. of America, 239 Pa. Super. 467, 362 A.2d 1017 (1976); Celley v. Mutual Benefit Health and Acc. Ass'n., 229 Pa. Super. 475, 324 A.2d 430 (1974). These rules of construction are necessary because, as this court has noted, insurance policies are in essence contracts of adhesion. Ranieli v. Mutual Life Ins. Co. of America, 271 Pa. Super. 261, 413 A.2d 396 (1979)", Eichelberger v.

Warner, 290 Pa. Super. 269, 434 A.2d 747 (1981). The difficulty is the application of the foregoing principles to a specific contract of insurance. In many instances interpreters of contracts of insurance arrive at opposite results and cite the same principles of law in support of their interpretation.

Essentially, the touchstone for the application of the relevant legal principles is, as previously stated, the determination of whether the language of the document is ambiguous or uncertain or unclear; stated another way, whether the language is plain and clear and free of ambiguity.

We have set forth at some length the contentions of plaintiff in his brief in order to ascertain the particular words, phrases and provisions which he challenges as being ambiguous and susceptible of dual interpretation.

The words which plaintiff claims to be ambiguous in certain provisions are "cover", "covered" and "coverage". Such words are words of art in insurance policies and it is necessary to ascertain their meaning and their use in the provisions referred to by plaintiff.

Webster's Third New International Dictionary of the English Langauge, Unabridged, contains the following definitions of the above three words when used in reference to insurance.

| | |
|---|---|
| cover: | insurance coverage |
| coverage: | as insurance; protection by insurance policy; inclusion within the scope of a protective or beneficial plan |
| covered: | included in the group with respect to which a particular contract or agreement in force |

Black's Law Dictionary defines only two of the above words with reference to insurance, as follows:

cover: to protect by means of insurance

coverage: amount and extent of the risk

The insuring agreement, part I of the master policy, quoted in part by plaintiff, provides in its entirety as follows:

"In consideration of the application of the Policyholder a copy of which is attached to and made a part of this Policy, and of the payment of the premiums as provided herein, and subject to all the provisions, conditions, exclusions and limitations of this Policy, The Travelers Insurance Company, herein called the Company, AGREES WITH

the Policyholder

TO INSURE all members of the Policyholder, as hereinafter defined, and agrees to pay as to each person with respect to whom *coverage** is afforded hereunder, the benefit thereinafter described."

The entire clause, attributing the meaning of coverge hereinabove set forth, says Travelers agrees to insure and pay as to each person with respect to whom coverage (are included within the scope of the protection in the insurance policy, in the amount and extent of the risk) is afforded under the policy, the benefit described in the policy but only upon the payment of the premium and subject to all the provisions, conditions, exclusions and limitations of the policy.

Plaintiff quotes only a portion of the definition of "injuries" contained in both the certificate and master policy. Under part II, definition, "injuries" are defined as follows:

"The term "injuries" as used in this policy means accidental bodily injuries which are the direct and independent cause of the loss for which claim is made and are sustained by the insured or *covered*

dependent and occur while *coverage* under this policy is in force as to such person, . . ."

Consistent with the definitions hereinabove set forth "covered dependent" means a dependent included in the group with respect to which the insurance policy is in force and the word coverage as used in the context of the definition of "injuries" means that the accidental bodily injury occurs while the injured person is protected by the insurance policy and included within its protection.

The phrases "persons covered" and "covered persons" appear on the outside portion of the certificate as follows:

The class of membership as shown on the application for membership on file with the Policyholder determines the *Persons Covered* as follows:

| Class of Membership Selected | Covered Persons |
|---|---|
| 1 | Member Only |
| 2 | Member and Spouse |
| 3 | Member and Children |
| 4 | Member, Spouse and Children |

The word covered as hereinabove defined means "included in the group to which a particular contract or agreement is in force", persons covered and covered persons are one and the same and are those persons in the group provided for in the policy. Plaintiff argues that the phrases, persons covered and covered persons pertain *only* to the person for whom the premium has been paid. To the extent that persons covered, i.e., included in the group, are covered only if the premium is paid, plaintiff is correct, but plaintiff reads only one condition of the policy; the insuring agreement provides, as hereinabove set forth in full, that a person covered or covered person is included in the group. "In consider-

ation of the application of the policyholder . . . and of the payment of the premiums . . ., and subject to all the provisions, conditions, exclusions and limitations of this policy . . .", thus persons covered and covered persons are subject to the entire provision, not just a part of it. Further, since the insurance provided for persons other than the member is through the member, the certificate and the master policy contain the definition of a member as follows:

"A member for the purposes of insurance shall be a person whose application for membership has been accepted by the policyholder and whose membership has not been terminated."

In addition to persons covered and covered persons being subject to the entire provisions of the insuring agreement, they are, in the first instance, subject to the member's membership not being terminated in order to continue being a persons covered or a covered person.

Plaintiff states that, ". . . there are *repeated* references to coverage under the provision for effective date for an eligible dependent and the "termination of insurance in both the certificate and the master policy in the sense of being an eligible insured for whom the premium has been paid. The effective date provision for an eligible dependent is as follows:

"Coverage with respect to an eligible dependent shall commence on the same day that the class 2, 3, 4 membership becomes effective."

Eligible dependent, as defined in the certificate and master policy, means:

(a) The Member's Spouse; and

(b) The Member's unmarried child or children (including step-children, legally adopted children and foster children) who are 14 days and under 19 years of age (under 23 if unmarried, dependent on

Member and attending school of a full-time basis)."

Reading the provision for effective date together with the definition of eligible dependent, coverage commences consistent with the conditions for eligible dependent and, obviously, the payment of the premium, but exists and continues subject to the provisions of the insuring agreement. Although it is true that the payment of the premium brings a policy of insurance in force, such payment of premium does not erase all the other provisions, conditions, exclusions and limitations of the policy. As the courts cannot rewrite an insurance policy, neither can it erase therefrom except in certain circumscribed situations not herein involved.

As to the termination provisions of insurance, we need not set forth in full the lengthy provision by reason of the fact it neither expressly nor inferentially relates only to payment or non-payment of premiums. Obviously, termination can and would occur by way of non-payment of premiums; however, the provison relating to termination expressly relates to the date the policy terminates, or the date of termination of membership with the policyholders and, as to eligible dependents, the date such person ceases to fall within the definition of an eligible dependent.

There are neither repeated references to the term coverage nor is the term used in either of the foregoing provisions in the sense of being an eligible insured for whom the premium has been paid under the policy.

Plaintiff states that only in the exclusions section is the attempt clearly made to use the term (coverage) in a different sense by denying coverage because of loss caused by or resulting from operating an aircraft. The exclusion, fully set forth hereinabove, does not use the term coverage; it uses

the term cover which according to Webster's and Black's Dictionaries, supra, means insurance coverage and "to protect by means of insurance." Applying that meaning of cover as used in the exclusion section, the exclusion provides the insurance under this policy shall not "protect by means of insurance" nor be "insurance coverage" for any loss caused by or resulting from operating an aircraft.

To the extent that plaintiff seeks to rely upon the term "coverage" used in the aforesaid provisions as being inconsistent, uncertain, unclear and ambiguous, we find when reading all of the aforesaid provisions together the terms "cover" and "coverage" are plain, clear, consistent and free of any ambiguity.

Plaintiff next urges that the joint deaths of Jacob and Ahouva did not fall within the exclusion; to be effective, "Only a crash occurring while both were piloting the plane as pilot and co-pilot respectively, would have brought the loss within that exclusion". Without any analysis of the language of the exclusion plaintiff then asserts, "This narrow interpretation of the exclusionary language is justified because of the ambiguity and uncertainty of the language used, and its susceptibility to more than one construction." Plaintiff neither points out the language which is ambiguous and uncertain nor more than one construction of the language of the exclusion.

The insurance policy provides payment of $100,000 for the death of a member and covered spouse in a common accident. Jacob as a member and Ahouva as a covered spouse having died in a common accident, without more, are included in the group and within the scope of the protection with respect to which this policy was issued and in force. Jacob was the pilot of the airplane. As pilot of the airplane, by reason of the exclusion, Jacob was

taken out of the group and was not within the scope of protection with respect to which the policy was issued and in force. Thus, Jacob, as pilot of the airplane, was without insurance during all times of the flight of the plane and the crash; Ahouva as a passenger was at all times insured. The policy does provide for the payment of the benefit because of joint death in a common accident, but only if there is insurance for both member and spouse in force at the time of death. To hold otherwise would render all the other provisions of the policy a nullity.

The last argument of plaintiff is that by reason of the exclusion being cast in singular terms "there is an ambiguity" and the insurer never intended that the language of the exclusion apply to a multiple death or common accident situation. By reason of our foregoing analysis there is no merit in this contention.

Finding the language of the relevant provisions of the certificate and master policy to be without ambiguity, summary judgment will be entered for Travelers.


## SUMMARY JUDGMENT AGAINST EXXON

The claim of plaintiff against Exxon is in assumpsit and appears as the second count of the complaint and is based on the Club's 1981 sales brochure, one page of which is attached to the complaint as Exhibit B, page four of the Club's 1981 Membership Handbook attached to the complaint as Exhibit C, and pages eight and nine of the Club's 1981 Membership Handbook attached to the complaint as Exhibit C, and pages eight and nine of the Club's 1981 Membership handbook attached to the complaint as Exhibit D.

In plaintiff's complaint against Exxon to recover $90,000 he alleges as follows:

12. The averments of Paragraphs one through six, inclusive, of the complaint are incorporated herein by reference thereto, as fully as though the same were here set forth in length.

13. On April 20, 1981, Class 2 basic membership in the Exxon Travel Club included accidental loss of life insurance for a member and covered spouse as set forth in the Club's 1981 membership sales brochure. A true and correct copy of the relevant portion of said sales brochure is attached hereto, marked Exhibit "B", and incorporated herein by reference thereto.

14. On April 20, 1981, Class 2 basic membership in the Exxon Travel Club included accidental loss of life insurance for a member and covered spouse as set forth in the Club's 1981 Membership Handbook.

15. At page four of the Club's 1981 Membership Handbook, the Club contractually agreed to provide "the five basic benefits of membership" referred to therein. A true and correct copy of page four is attached hereto, marked Exhibit "C", and incorporated herein by reference thereto.

16. Basic benefit No. 3 referred to at Page four of the Club's 1981 Membership Handbook was accidental loss of life insurance.

17. Basic benefit No. 3 referred to at Page four of the Club's 1981 Membership Handbook was explained at Pages eight and nine of the Club's 1981 Membership Handbook a true and correct copy of which is attached hereto, marked Exhibit "D", and incorporated herein by reference thereto.

18. The Club's 1981 membership sales brochure, Exhibit "B" attached hereto, described a "Special $100,000 Benefit Feature" as follows: "If both member and spouse are covered (Class 2 and 4) and

both should be killed in the same accident or separate accidents within the same 24-hour period, the amount of insurance for both member and spouse together is $100,000."

19. Page nine of the Club's 1981 Membership Handbook, included at Exhibit "D" attached hereto, describes a "Special Feature: $100,000" as follows: "If both member and spouse are covered (Class 2 or 4) and if both should be killed in the same accident, or separate accidents within the same 24-hour period, the amount of insurance for both member and spouse together is $100,000."

20. Notwithstanding the provisions of the Club's 1981 membership sales brochure and the Club's 1981 Membership Handbook, the plaintiff has been paid accidental loss of life insurance benefits of only $10,000 by reason of Jacob Aghassy's Class 2 basic membership in the Club and the deaths of Jacob Aghassy and Ahouva Aghassy in the same accident.

Plaintiff in drawing his complaint, as hereinabove set forth, has used only selected passages from the portions of the Club's 1981 membership sales brochure (Exhibit B); page four of the Club's 1981 Membership Handbook (Exhibit C) and pages eight and nine of the Club's 1981 Membership Handbook (Exhibit D).

While it is true that each of the exhibits state what plaintiff quotes in his complaint, plaintiff conveniently ignores other passages in the same exhibits, all of which exhibits the plaintiff has incorporated in his complaint.

The passages contained in the exhibits, in addition to those quoted by plaintiff, are as follows:

### Exhibit B

"With these exceptions: Loss resulting from suicide (whether sane or insane); acts of declared or

undeclared war; while operating or learning to operate or while serving as a member of a crew of an aircraft. All other accidental deaths are covered including normal air travel as a passenger.

•  •  •

SPECIAL $100,000 BENEFIT FEATURE

•  •  •

Insurance coverage is provided by a master policy issued to the Club by the Travelers Insurance Company of Hartford, Connecticut . . . .

Exhibit C, page 4

NOTE: The Travelers Insurance Company has issued a Master Policy to EXXON Travel Club for the accidental loss-of-life insurance coverage for all members and EXXON Travel Club has contracted with National Surety Corporation to provide bail bond service.

Exhibit D, page 8

EXCEPT, loss resulting from suicide (sane or insane) or any attempt thereat nor shall it cover any loss caused by or resulting from declared or undeclared war or any act thereof, or operating or learning to operate or while serving as a member of a crew of an aircraft.

This insurance is provided by a master policy issued to the Club by The Travelers Insurance Company of Hartford, Connecticut, . . .

•  •  •

Individual policies will not be issued; however, your certificate of insurance contains all the pertinent provisions of the coverage, . . .' "

It is clear from the foregoing that if the Club's 1981 membership brochure and membership handbook constitute a contract between the member and Exxon the contract was to provide insurance by way of a master policy of Travelers evidenced by a certificate of insurance. Plaintiff having brought an action against Travelers on the certificate in the first count of the complaint, paragraphs one through six of which are incorporated in the complaint against Exxon, and plaintiff's reliance on the master policy in his brief, it is clear that Exxon has complied with the statements in its sales brochure and membership handbook.

Further, if the sales brochure and membership handbook are deemed to be a separate contractual undertaking by Exxon to insure the member and dependent's which we hold it is not, the plaintiff cannot recover for the same reasons we have set forth in the disposition of the summary judgment motion of Travelers. There being no genuine issue of fact relating to the claim against Exxon in the second count of the complaint, summary judgment will be entered for Exxon.

## ORDER

And now, this March 2, 1982, after argument, consideration of the briefs of the parties and a review of the record, it is ordered as follows:

1. The motion for summary judgment of plaintiff against the Travelers Insurance Company is denied.

2. The motion for summary judgment of Travelers Insurance Company against plaintiff is granted.

3. The motion for summary judgment of Exxon Travel Club, Inc., against plaintiff is granted.

4. The prothonotary is directed to enter judgment as herein order upon payment of the appropriate fee.