## FEDERAL KEMPER INSURANCE CO.

v.

Shirley **WARD**, Administratrix of the Estate of Ward, Richard, deceased; and Wilson Walters, Susan Penny; and Vogelsong, Elaine, in her own right and for the Estate of Vogelsong, Charles W., deceased; and Patrick, William & Velva, in their own name and as parents & co-administrators of the Estate of Patrick, Micah; and Barton, James H. & Charlene, co-administrators of the Estate of Barton, Jeffrey; and Barton, James H. & Charlene, co-administrators of the Estate of Barton, Karen; and Vogelsong, Elaine W.; and Barton, Charles V.; and Barton, Jennifer; and Patrick, Velva V.

Civ. A. No. 83–2662.

United States District Court,
E.D. Pennsylvania,
Civil Div.

Feb. 10, 1988.

discovery completion date of March 2, 1987. On March 3, 1987, the discovery completion date was extended to August 3, 1987.

Roger E. Legg, West Chester, Pa., for plaintiff.

Patrick T. Ryan, Philadelphia, Pa., Michael J. Reed, Paoli, Pa., Joseph G. Riper, Thomas A. Pitt, Jr., Cathy Wilson Huzzard, West Chester, Pa., for defendants.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, District Judge.

This matter comes before the court under the Declaratory Judgment Act, 28 U.S. C.A. §§ 2201 and 2202 (West 1982 & Supp. 1987) for a determination as to whether or not plaintiff Federal Kemper Insurance Company (Kemper) is obligated to defend and indemnify defendant Shirley Ward (Shirley) as administratrix of the estate of Richard Ward (Rick), deceased. The parties do not dispute that diversity jurisdiction lies under 28 U.S.C.A. § 1332 (West 1966 & Supp.1987) and that the amount in controversy exceeds $10,000.00. They have also stipulated that a certain automobile insurance policy No. R129365 was duly issued by Kemper to Shirley and was in force on November 29, 1980, when there was an accident, and that Rick was Shirley's son and was a resident of Shirley's household on that date. They further stipulate that Rick's driving privileges were revoked as of July 17, 1980, and that a vehicle involved in the accident, a green 1972 Ford truck, was insured by defendant Susan Penny Wilson Walters (Penny) under Policy No. S396478–F16–38B with State Farm Insurance on June 16, 1980. The parties also agree that the Kemper policy did not list the green 1972 Ford truck as a covered automobile.

The policy Kemper issued to Shirley contained language common to many insurance policies. It provided in Part I that Kemper will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident and defined covered person as "You or any family member for the ownership, maintainence or use of any auto...." Part I further provided that for any auto other than a covered auto, covered person means any person: "but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this part. This provision applies only if the person ... does not own or hire the auto...."

Under the heading of exclusions, it is provided that:

"We do not provide liability coverage

. . . . . .

For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by or furnished or available for the regular use of any family member."

Although it does not dispute that Rick was a family member of Shirley's household at the time he was killed in the November 29, 1980 automobile accident, Kemper claims it is under no duty to defend or indemnify Shirley because Rick was both an owner of and a regular user of the green 1972 Ford pickup truck which was involved in the accident.

The additional facts as we find them, from the testimony of the nine witnesses we heard, may be summarized as follows. The green 1972 Ford pickup truck was initially owned by William Wilson, father of Penny. Rick and Penny were planning to be married in early 1981, and Rick wanted to buy the truck for transportation for himself and Penny. William Wilson sold the truck and Rick paid for it. Rick's driver's license was or was about to be revoked, and he concluded that the truck should be titled in Penny's name. During the Fall of 1980, Penny made use of the truck about ¾ths of the time and Rick used it about ¼th of the time. He used it a couple of times a week without Penny present, although the two often drove in the truck together. On one occasion, Rick drove the truck out of the state to a place of employment for about one week. Sometime prior to this, Rick had also requested his brother, who repaired cars, to make some repairs to the truck. On six to twelve occasions, it was observed by Penny's employer that Rick drove Penny to work and then continued to drive the truck after dropping Penny off. Rick also told other people that he was buying, or had bought or owned the truck.

We have great difficulty in accepting the testimony and selective recollection of Penny, who could remember details about things such as one set of keys and telling Rick that he could not use the truck whenever he wanted, but could not for certain recall who paid for the truck, and Janice Wilson, Penny's mother, who, unlike her husband and other witnesses, somehow did not know that Rick's driver's license was revoked, but managed to witness any number of incidents in which Penny allegedly asserted her sole ownership of the truck. In sum, we resolve the obvious credibility issues in favor of the plaintiff's witnesses, who were themselves for the most part somewhat reluctant. We must decide, under the facts, if Rick was an owner of the truck or the truck was furnished or available for his regular use.

The parties all agree that the law of Pennsylvania, the state in which Shirley resided when Kemper issued her its policy, controls. In a diversity case, a U.S. District Court sitting in Pennsylvania applies the conflict of laws rule that an insurance policy is interpreted by the laws of the state where it is contracted and it is contracted where it is delivered. *United States Casualty Co. v. Liberty Mutual Insurance Co.*, 208 F.Supp. 36 (E.D.Pa. 1962). If proof as to the place of delivery is lacking, there is a presumption that the delivery took place at the insured's residence. *Roth v. Maryland Casualty Co.*, 209 F.2d 371 (3d Cir.1954).

The interpretation of an insurance contract is a question of law for the court. *Adelman v. State Farm Mutual Auto Insurance Co.*, 255 Pa.Super. 116, 386 A.2d 535 (1978). When a word used in an exclusion is specifically defined in the definitions section of the policy, that definition is controlling in determining the applicability of the exclusion. *Id.* 386 A.2d at 538. The terms at issue in the instant case, "own" and "furnished or available for ... regular use" are not specifically defined in the policy. "Courts, however, cannot rewrite the terms of the policy or give them a construction in conflict with the accepted and plain meaning of the language used. (Citation omitted)." *Id.*

First, we shall consider the "accepted and plain meaning" of the term "own". In common usage, that word means: "to have or hold as one's own; possess." *The Random House Dictionary of the English*

*Language* (1967). The interpretation given by the law is no different. That the truck was titled and insured in Penny's name is not dispositive. "The certificate of title is in no way controlling on the question of ownership and is merely some evidence of it. *Wasilko v. Home Mutual Casualty Company*, 210 Pa.Super. 322, 232 A.2d 60 (1967)." *Folmar v. Hartford Accident & Indemnity Co.*, 242 Pa.Super. 350, 363 A.2d 1304, 1307 (1976). Moreover, the imminent revocation of Rick's driver's license, in June, 1980, made it preferable, in Rick's view, for Penny to hold title, if insurance were to be secured.

The elements of ownership of a motor vehicle are said to be "use, benefit, possession, control, responsibility for and disposition of...." *Wasilko v. Home Mutual Casualty Co.*, 210 Pa.Super. 322, 326, 232 A.2d 60 (1967). From the testimony introduced at trial, the fairest characterization of the ownership of the truck appears to be a "joint ownership" enjoyed by Rick and Penny. Many times in the testimony, Rick and Penny were referred to as an engaged couple who planned to be married in the forthcoming year. Rick had stated that he wished to buy the truck so that he and Penny could have transportation. Rick's money alone was used to purchase the truck. That Rick used the truck is evident from the testimony at trial from his relatives, friends, and Penny's employer. The truck benefited him, as well as Penny, as a means of transportation. This was especially true when he needed to travel out of state for one week on a job. As for possession and control, testimony indicates that Rick used the truck a couple of times per week without Penny present. Although testimony indicates that Rick enjoyed the truck 25% of the time and Penny 75% of the time, in Penny's 75% of the time she was often accompanied by Rick. Although the topic of responsibility for the truck, *e.g.*, repairs and maintenance, was not directly addressed at trial, Rick's brother did testify that Rick had requested him to make some repairs to the truck. No evidence was offered as to which of the couple could decide the "disposition" of the truck, perhaps because the truck had been recently purchased and no thought had been entertained by either Rick or Penny of disposing of it.

■ Given all of the above circumstances, although Rick alone might not be said to be "the" owner of the truck, it would be reasonable to conclude that he was "an" owner of the truck, together with his fiancee, Penny.

As an owner, Rick found the truck "furnished or available for ... regular use," as well. In common usage, "furnished" means: "to provide or supply"; "available" means: "suitable or ready for use" and "readily obtainable; accessible"; and "regular" means: "usual; normal; customary". *The Random House Dictionary of the English Language* (1967). As to the interpretation attached by Pennsylvania law to this phrase,[1] we have been unable to find appellate cases to furnish us authority.[2]

1. Anno., 8 A.L.R.4th 387 (1981) addresses the topic "When is automobile furnished or available for regular use within 'drive other car' coverage of automobile liability policy." This annotation shows the wide diversity of attitude taken by the courts as to what constitutes regular use and the difficulties attendant upon resolving this issue. The only Pennsylvania case cited therein is *Folmar v. Hartford Accident & Indemnity Co.*, 242 Pa.Super. 350, 363 A.2d 1304 (1976). (The insured's stepson was involved in an accident while driving an automobile which he had just purchased from his natural father and intended henceforth to use as his own. Title still remained in the natural father, but as the *Folmar* court stated: "The certificate of title is in no way controlling on the question of ownership...." *Id.* 363 A.2d at 1307. The court found coverage in the *Folmar* circumstances to be excluded).

2. When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir.1985); *Connecticut Mutual Life Insurance Co. v. Wyman*, 718 F.2d 63, 65 (3d Cir. 1983). When, however, the highest court of the state has not authoritatively considered the issue, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted

We have, however, found two Common Pleas court cases which deal with the phrase "furnished for regular use." Although not controlling, such cases may be noted by a federal court. *See Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22 (3d Cir. 1986).

Neither Common Pleas court case is on all fours with the case at bar. In *Kieffer v. Nationwide Insurance Co.*, 7 Pa.D. & C.3d 293, 299 (1978), the daughter-owner of a car, who resided in the parental home, left the registration card and keys at home and had stated that the car was there for anyone who wanted to use it. The court found that the daughter-owner's car was "furnished for the regular use" of the mother-driver who was involved in an accident while driving it. The court found coverage excluded under two provisions of the policy: an exclusion of coverage based on the vehicle's being owned by a member of the insured's household and an exclusion based on the vehicle's being furnished for the regular use of the policyholder. In examining the insurer's rationale behind these two exclusions, the court said:

"The purpose behind the contractual provisions here involved seems obvious. Defendant wished to restrict its risk. It could have restricted it by contract to accidents in which the insured was driving her own insured car. It went beyond this, however, and in essence insured the insured when she was driving another car which was not that of a household member and which was not furnished for her regular use. This covered the insured for miscellaneous kinds of situations in which she was driving someone else's car, but *excluded certain vehicles where there was the likelihood of more frequent use. The test of the exclusion, however, is not use but availability for use or ownership by a member of a group who would be likely to make*

their cars available for each other's use." (Emphasis supplied).

*Id.* at 298.

In *Johnson v. Braunsberg*, 51 D. & C.2d 659 (1970), the owner-son was a serviceman who had left his car at his father's house to have his father sell it while he was away on duty. Within two months, the serviceman's brother, who lived with their father, was involved in an accident while driving the car. The court found that the car had not been "furnished for the regular use" of the driver-brother, when the purpose of leaving the car at home was to have it sold. Although the driver-brother "made use of" the car, there was "nothing to indicate the frequency or regularity of any use by Thomas [the driver-brother]." *Id.* at 663. The policy in *Johnson* had extended protection to "any relative ... with respect to a nonowned automobile not regularly furnished for use of such relative." *Id.* at 660. Of the meaning to be attached to that phrase, the court said:

"It is generally held that such a clause covers the insured during *infrequent or casual use* of a nonowned automobile but excludes coverage as to another's automobile *which the policyholder frequently uses or has the opportunity to use: American Casualty Co. v. Lattanzio*, 78 N.J.Superior Ct. 404, 188 A.2d 637 (1963); Annotations, 173 A.L.R. 901, 86 A.L.R.2d 937." (Emphasis supplied).

*Id.* at 661.

In the instant case, we have neither a *Kieffer* nor a *Johnson* situation. We believe, however, that the rather unique facts of the instant case come within *Kieffer*'s "availability for use" and *Johnson*'s "frequently uses or has the opportunity to use" language. It is important to remember that this truck was a vehicle purchased with Rick's own money and shared with the young woman whom he hoped to marry shortly. The source of the funds, the na-

with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980), cert. denied 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). *See also Becker v. Interstate Properties*, 569 F.2d 1203, 1205 (3d Cir.1977), cert. denied 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In this effort, the federal court must give "proper regard" to the relevant rulings of other courts within the state. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1965). *See also Erie Castings Co. v. Grinding Supply, Inc.*, 736 F.2d 99, 100 (3d Cir.1984); *Wyman*, 718 F.2d at 65.

ture of their relationship, and the frequency with which Rick was observed using the truck all militate against giving credence to Penny's assertion that she told Rick he could not use the truck whenever he wanted. Witnesses testified that Rick would drive the truck alone, without Penny, a couple of times per week. On six to twelve occasions, Rick was observed by Penny's employer dropping Penny off at work and then continuing his journey in the truck. There was also no indication at trial that Rick had any difficulty in securing the truck when he needed it to go out of state for a job. Rick may not have used the truck every day, but the frequency with which he was sighted in it and the apparent ready access he had to it would indicate that the truck was "available" to him and that he "frequently use[d] or ha[d] the opportunity to use" it.[3] Although Rick may have had a revoked driver's license, his use of the truck was substantial.

Also, witnesses testified as to the frequency with which Rick and Penny were seen together. Rick and Penny, as one would expect with an engaged couple, spent much of their free time together. The fact that Penny may have had one set of keys amounts to little significance in view of the fact that Penny was so often in Rick's company.

In the instant case, we are dealing with the language of certain policy exclusions. A provision of an insurance policy is ambiguous only if reasonably intelligent persons would honestly differ as to its meaning, when considering it in the context of the entire policy. *Celley v. Mutual Benefit Health & Accident Association*, 229 Pa.Super. 475, 324 A.2d 430 (1974). But, "if ...

ambiguity exists as to an exception to general liability, the language must be strictly construed against the insurance company. *Frisch v. State Farm Fire & Cas. Co.*, 218 Pa.Super. 211, 214, 275 A.2d 849, 851 (1971)." *Id.* 324 A.2d at 435. Where the language in an insurance policy is clear and unambiguous, however, the court must give effect to such language. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983).

■ We have read the exclusions in the policy which Kemper issued to Shirley and we believe that those exclusions clearly state, in common language, that coverage will not be afforded if a family member owns the vehicle not specifically covered in the policy or if the vehicle not specifically covered in the policy is furnished or available for that family member's regular use. We believe that, in the instant case, both exclusions apply, because there are sufficient indicia of Rick's joint ownership of the truck with Penny and because the frequency with which Rick was sighted in the truck and his apparent access to it leave us with the sense that the truck was furnished or available for Rick's regular use. The facts are rather unique, and we do not relieve Kemper of its usual contractual burdens lightly. Accordingly, we find that, since these exclusions apply, Kemper is relieved of the duty to defend and indemnify Shirley, as Administratrix of the Estate of Richard Ward, deceased. The foregoing constitutes our findings of fact and conclusions of law.

An appropriate order follows.

3. The court in *Johnson* further opined, in dicta: "In an age when relatives often lend their cars to one another, the restrictive interpretation urged upon us by the garnishee would create a wide gap in insurance coverage which would work to the serious detriment of both the driver and the public at large. Insofar as there is an absence of exclusionary words which clearly relate to a specific factual situation, an insurance contract should be interpreted to provide coverage." *Johnson*, 51 D. & C.2d at 663. *Johnson*, of course, was speaking of a non-resident relative who left his car in his family's care for the purpose of what he hoped would be an imminent sale. In the instant case, Penny was Rick's fiancee and a co-owner of the truck that was to be their form of transportation then and in the household that they would shortly form. Nor would Penny be, under those circumstances, "lending" the truck to Rick. We also believe that the exclusionary words in the policy in the instant case do relate to a specific factual situation—ownership or regular use. The case at bar is decided only on its unique set of facts and we make no comment regarding the type of situation presented in the *dicta* in *Johnson*.

## ORDER

AND NOW, this 10th day of February, 1988, upon consideration of the facts and applicable law, the court determines that Richard Ward, deceased, was both an owner of and a regular user of the green 1972 Ford pickup truck involved in an accident on November 29, 1980 within the meaning of the Kemper Insurance Policy No. R129365. Accordingly, Kemper is under no duty to defend or indemnify defendant Shirley Ward as Administratrix of the Estate of Richard Ward, deceased. We make no determination as to whether Richard Ward was driving the green 1972 Ford pickup truck at the time of the accident, nor was this an issue before us.